IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY and HOFFMAN-LA ROCHE INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 08-627 (JJF) |
| v. | ) | <u>CONSOLIDATED</u> |
| TEVA PHARMACEUTICALS USA, INC., | ) ) | |
| Defendant. | ) ) | |
| THE PROCTER & GAMBLE COMPANY and HOFFMAN-LA ROCHE INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 09-143 (JJF) |
| v. | ) ) | |
| APOTEX INC. and APOTEX CORP. | ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT APOTEX INC.'S AND APOTEX'S CORP.'S MOTION TO COMPEL

OF COUNSEL:
William F. Lee
Vinita Ferrera
Allen C. Nunnally
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

David B. Bassett
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com (#5098)
Laura D. Hatcher
hatcher@rlf.com
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19899
(302) 651-7700
Attorneys for Plaintiffs The Procter & Gamble
Company and Hoffmann-La Roche Inc.

Mark E. Waddell
Loeb & Loeb LLP
345 Park Avenue
New York, NY
(212) 230-8800

Dated:  July 19, 2010

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ...................................................................................................... 1

I.   FACTUAL BACKGROUND ............................................................................. 2

II.  ARGUMENT ................................................................................................. 5

    A.   P&G Has Acted Diligently to Fulfill Its Discovery Obligations And
        Will Continue To Do So ......................................................................... 5

    B.   The Plaintiffs Have Provided Substantive Supplemental Interrogatory
        Responses Appropriate for the Status of the Litigation .......................... 7

        *1.   Plaintiffs Have Provided Substantive Responses to Contention
            Interrogatories* ............................................................................ 7

        *2.   Plaintiffs Have Provided Appropriate Responses and Supplemental
            Responses to Other Interrogatories* .......................................... 9

        *3.   Plaintiffs Reliance on Rule 33(d) is Appropriate* ......................... 10

    C.   Apotex's Motion Violates Local Rule 7.1.1 and Should Be Dismissed
        with Cross of Opposition Awarded to Plaintiffs ..................................... 10

CONCLUSION ...................................................................................................... 12

RLF1 3591945v. 1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Health Sys., Inc. v. Crozier-Keystone Health Sys.*,
    1994 WL 505034 (E.D. Pa. Sept. 12, 1994) ............................................................11

*Kelly v. Old Dominion Freight Line, Inc.*,
    2010 WL 1676772 (11th Cir. Apr. 27, 2010), *petition for cert. filed*,
    78 U.S.L.W. 3765 (U.S. June 16, 2010) (No. 09-1547) ..........................................11

**STATUTES & RULES**

Local Rule 7.1.1 ...................................................................................................1, 10, 11

Rule 33(d) ..............................................................................................................4, 8, 10

RLF1 3591945v. 1

## INTRODUCTION

In its July 1, 2010 Motion to Compel (D.I. 72) (the "Motion"), Defendants Apotex Inc. and Apotex Corp. (collectively "Apotex") ask the Court to compel (1) Plaintiffs The Procter & Gamble Co. ("P&G") and Hoffmann-La Roche Inc. ("Roche") (collectively, "Plaintiffs") to provide "substantive responses" to certain of Apotex's interrogatories and (2) P&G to produce "all responsive documents requested by Apotex." In bringing this motion, however, Apotex simply disregards the fact that, on a June 21, 2010 meet-and-confer teleconference, Plaintiffs explicitly *__agreed__* to provide supplemental interrogatory responses by July 7, 2010, and P&G explicitly *__agreed__* to produce the majority of its remaining relevant documents by July 7, 2010, and to finish its production completely on a rolling basis as soon thereafter as possible. In fact, Apotex *__raised no objection__* to this course of action proposed on that meet-and-confer teleconference and had no further communication with the Plaintiffs to suggest any dissatisfaction with that agreed course of action prior to serving its Motion. Moreover, having already ignored the apparent accord reached on June 21, and having flouted the meet-and-confer process in violation of Local Rule 7.1.1 by bringing this motion in the first instance, Apotex further failed to withdraw its motion in the face of the substantive supplemental interrogatory responses and the production of nearly 770,000 pages of documents, representing the bulk of P&G's production, provided through July 7, 2010 as promised and agreed.

In filing and failing to withdraw a motion seeking discovery that was already promised and since delivered by the Plaintiffs, Apotex's Motion to Compel can only be viewed as a tactical effort to persuade this Court that P&G's pending Motion to Substitute should not be granted. Apotex's otherwise inexplicable tactic of seeking the Court's intervention to obtain discovery that it knew it would receive – and, in fact, has since received – is a waste of resources

1

for both the Court and Plaintiffs. Accordingly, Apotex's Motion should be dismissed as moot, and the Court should award Plaintiffs costs of opposing this motion.

## I.     FACTUAL BACKGROUND

After filing this infringement suit on March 4, 2009 against Apotex (C.A. No. 09-143-JJF), Warner Chilcott plc and P&G signed a Purchase Agreement on August 24, 2009 through which Warner Chilcott plc acquired the worldwide prescription pharmaceuticals business of P&G and its affiliates. (*See* Declaration of Allen C. Nunnally in Support of Plaintiffs' Opposition to Apotex's Motion to Compel ("Nunnally Decl."), Ex. 1.) Warner Chilcott plc's acquisition of P&G's pharmaceutical business was officially completed on October 30, 2009, at which time Warner Chilcott Company, LLC acquired all intellectual property rights relevant to this lawsuit that were formerly held by P&G. (*Id.* ¶ 5.) As of October 30, 2009, P&G ceased to engage in any manufacturing, marketing, sales, and associated functions of prescription pharmaceutical products. (*Id.*) Following the divestiture of its pharmaceutical business, however, P&G has continued to collect and produce all relevant P&G custodians' files and P&G shared files in connection with this lawsuit. (*Id.* ¶ 6.)

On December 22, 2009, P&G made its first document production to Apotex, providing over 200,000 pages of responsive documents. (*Id.*, Ex 5.) In mid-December, Apotex proposed for the first time that the parties should reach a formal agreement on particular search terms to be used for electronic documents, which represent the vast bulk of relevant documents in this litigation. (*Id.* ¶ 8.) In light of this proposal, P&G suggested in mid-December that the parties work together to establish agreed terms. (*Id.*, Ex. 3) Having heard nothing in response from Apotex, P&G formulated and sent to Apotex its own proposed search terms to be run against its electronic data on February 2, 2010. (*Id.*, Exs. 4, 5.) After again receiving no response, P&G

2

followed up with Apotex on February 12, 2010 and on February 18, 2010, urging Apotex to engage in discussions about search terms so that they could be finalized and executed, and so that documents could be reviewed for production as soon as possible. (*Id.*, Ex. 6.) After P&G's repeated inquiries, Apotex finally agreed to set up a call to discuss the search terms on February 18, 2010. Negotiation over those search terms did not conclude until *late March 2010*. (*Id.* ¶ 11.) In the three-month period since these search terms were finalized, outside counsel for P&G, utilizing a team of 17 attorney reviewers, have reviewed more than *2.25 million pages* of documents, which represents over 80% of the total number of pages returned by the broad search terms requested by Apotex. (*Id.* ¶ 12.) On June 16, 2010, P&G produced the first yield of this production in the form of nearly 140,000 pages of documents. (*Id.*, Ex. 7.)

On June 17, 2010, less than three months after agreement had been reached on Apotex's broad search terms and some three weeks *prior to* the scheduled date for the completion of document production and the service of contention interrogatory responses, counsel for Apotex sent a letter to counsel for Plaintiffs stating that P&G's document production and Plaintiffs' interrogatory responses were deficient. (*Id.*, Ex. 8.) In its letter, Apotex threatened to move to compel the production of documents from P&G and supplemental interrogatory responses from Plaintiffs if a satisfactory resolution was not reached by June 22, 2010. (*Id.*) Counsel for P&G promptly scheduled a meet-and-confer teleconference with counsel for Apotex, which was conducted on June 21, 2010. (*Id.*, Ex. 9.) During that call, counsel for P&G explained to counsel for Apotex that there was no disagreement about the documents that needed to be produced, that P&G was working diligently on that effort, and that it expected to produce the vast majority of its responsive documents by July 7, 2010 – with any remaining documents being produced as soon thereafter as possible on a rolling basis. (*Id.* ¶ 16.) P&G's counsel further

3

explained that Plaintiffs would supplement their interrogatory responses, including contention interrogatory responses, by July 7, 2010, consistent with the Court's Scheduling Order.[1]  (*Id.*) Counsel for Apotex raised no objection to the course of action laid out by counsel for P&G, and the parties agreed on the call that there was not a particular dispute in regard to these discovery issues.  (*Id.*)  As a result, Counsel for Plaintiffs believed in good faith that all issues had been resolved and understood that Apotex would ***not*** file a motion to compel on these issues.

After hearing nothing further from Apotex in this regard, however, on July 1, 2010, Plaintiffs received Apotex's Motion to Compel, on the same day that Apotex submitted its opposition papers to P&G's Motion to Substitute WCCLLC for P&G as a plaintiff and party-in-interest in this action.  On July 6, 2010, counsel for Plaintiffs wrote to counsel for Apotex to express concern about the filing of Apotex's Motion to Compel that sought the production of documents and supplemental interrogatory responses Plaintiffs had already agreed to provide and requesting that Apotex withdraw that motion.  (*Id.*, Ex. 10.)  On July 7, 2010 (as promised on the June 21 meet-and-confer call), P&G produced an additional 430,000 pages of documents, representing the bulk of its then-remaining production, and Plaintiffs served supplemental interrogatory responses to, *inter alia*, Apotex's contention interrogatories.  (*Id.* ¶ 18 & Exs. 11, 12.)  In spite of P&G's production of 770,000 pages of documents and Plaintiffs' service of supplemental interrogatory responses, Apotex has failed to withdraw its unnecessary Motion.

---

[1] Counsel for P&G did note that interrogatory responses pursuant to Rule 33(d) may require further supplementation upon completion of P&G's document production once all appropriate Bates numbered documents were available.

## II.   ARGUMENT

### A.   P&G Has Acted Diligently to Fulfill Its Discovery Obligations And Will Continue To Do So.

Apotex's assertions that P&G has not, or will not, fulfill its discovery obligations are wholly without merit.  As discussed in detail above, P&G has produced most of its relevant documents to date and has reviewed for production more than 80% of documents returned by the broad search terms requested by Apotex.  Given the fact that Apotex and P&G did not reach agreement on final search terms until late March 2010 (following an extended period of delay during which Apotex failed to discuss search terms promptly, despite multiple inquiries from P&G) and in light of the enormous amount of resources P&G has dedicated to this collection, review, and production effort, Apotex's suggestion that P&G has engaged in "dilatory" discovery conduct is as disingenuous as it is unfounded.   P&G has diligently conducted appropriate searches of electronically stored information, has interviewed and collected documents for production from dozens of custodians, has harvested numerous shared files and repositories, and has expended hundreds of attorney-hours in the review of documents for production.  As a result, more than *three-quarters of a million pages*, representing the bulk of P&G's production, have been produced to date,[2] and all other responsive documents from P&G have already been collected, are currently being reviewed for production, and will be produced as soon as possible.

Moreover, as Apotex fails to note in its motion, Roche is the owner of the only patent – U.S. Patent No. 7,192,938 ("the '938 Patent") – asserted against Apotex in this litigation, and Roche has already provided *millions of pages* of documents to Apotex in a patent litigation in

---

[2] In regard to the handful of publicly available documents identified by Apotex as containing redactions, counsel for P&G indicated to Apotex that privileged marginalia may have been redacted from these documents but that the issue would be investigated and any improperly redacted documents reproduced in unredacted form. (*Id.* ¶ 19.)

which the '938 Patent was also asserted against Apotex. Among these millions of pages of documents are those concerning Roche's inventions, relevant research, and development work pertaining to the once monthly bisphosphonate dosing regimen, the monthly dosing regimen as it pertains to risedronate, as well as documents concerning unexpected results and secondary considerations of non-obviousness of the inventions of the '938 Patent. As Apotex acknowledges in passing in a footnote, the Plaintiffs agreed that all documents produced by Roche in that litigation are deemed produced in this litigation. (Apotex Br. at 2 n.3.) In addition, Apotex designated a small number of other documents for production from a searchable database made available by Roche, which were produced on July 15, 2010. (*Id.*, Ex. 13.)

Lastly, Apotex is simply incorrect in its assertion that P&G has refused to produce relevant documents pertaining to the divestiture of P&G's pharmaceutical business to Warner Chilcott. During the June 21 meet and confer call, which occurred months after the outdated correspondence that Apotex cites in its Motion, P&G explicitly confirmed that it and Warner Chilcott were producing these documents, consistent with the responses from P&G and Warner Chilcott to Apotex's document requests.[3] (*Id.* ¶ 21 & Exs. 15, 16.) Some of these documents have already been produced to Apotex, and the remainder will be produced shortly.

Thus, although P&G has not yet fully completely its production, given its production of 770,000 pages to date and the millions of pages of documents already produced by Roche,

---

[3] Apotex notes in its brief that responses to its document requests to P&G were fashioned as responses from WCCLLC. (*See* Apotex Br. at 2.) At the time these responses were served, Plaintiffs still believed that Apotex (and Teva) would be consenting to substitution of WCCLLC for P&G in this litigation, and since P&G's former pharmaceutical business had already been fully transferred to Warner Chilcott plc, Plaintiffs understandably believed the responses should come from WCCLLC as the new party-in-interest and owner of files relating to Actonel®. (*See* Nunnally Decl., Ex. 14.) In any event, as has been repeatedly explained to Apotex, all relevant documents from *both* P&G and Warner Chilcott are being produced to Apotex pursuant to these document requests. (*See id.*)

Apotex can hardly claim that it is prejudiced in regard to its access to documents relevant to the issues at the heart of this case. In any event, P&G has agreed to complete its production fully as soon as possible – as Apotex acknowledged and accepted on the June 21 meet-and-confer call.

**B.      The Plaintiffs Have Provided Substantive Supplemental Interrogatory Responses Appropriate for the Status of the Litigation.**

In its motion, Apotex also complains that Plaintiffs have not provided "substantive" responses to Apotex's interrogatories. As stated above, and in more particular detail below, on July 7, 2010, Plaintiffs served "substantive" supplemental interrogatory responses on Apotex, as was explicitly promised and agreed on the June 21, 2010 meet-and-confer call – and as provided for by the Court's Scheduling Order.

*1.      Plaintiffs Have Provided Substantive Responses to Contention Interrogatories.*

Plaintiffs initially objected to Apotex's contention interrogatories as premature in light of the Court's Scheduling Order, which states: "Exchange and completion of contention interrogatories . . . shall be commenced to be completed by July 7, 2010." Accordingly, the Plaintiffs' planned to supplement their contention interrogatory responses to provide substantive response to Apotex by July 7, 2010. In fact, P&G explicitly stated its intention to supplement its contention interrogatories by this date during the June 21 meet-and-confer call with Apotex without objection from Apotex. And on July 7, 2010, as promised, Plaintiffs supplemented their contention interrogatory responses.

In particular, Plaintiffs provided detailed claim charts in their supplemental response to Interrogatory No. 1 specifying how Apotex's proposed generic product will infringe asserted claims of the '938 Patent. (*See id.*, Ex. 12 at 6-9.) Thus, any alleged deficiency in regard to infringement contentions is now moot. Curiously, Apotex complains in its motion that P&G has not indicated how Apotex infringes U.S. Patent No. 6,165,513 ("the '513 Patent). As Apotex

7

well knows, however, P&G *__did not assert__* any claim of the '513 Patent against Apotex.  In fact, the only reason that the '513 Patent is at issue in this litigation at all is because Apotex filed a declaratory judgment action, seeking a ruling that the '513 Patent is invalid and not infringed. When Apotex was offered a covenant not to sue on the '513 Patent by P&G (and then WCCLLC), it refused to accept that offer and to drop its declaratory judgment action.[4]  Finally, in regard to U.S. Patent No. 5,583,122 ("the '122 Patent"), P&G did not assert any claim of the '122 Patent against Apotex and has never contended that Apotex infringes the '122 Patent, as Apotex did not file a Paragraph IV certification against the '122 Patent.   The original interrogatory response to which Apotex refers in its brief (*see* Apotex Br. at 6-7) contained a drafting error, and assertions regarding the '122 Patent were inadvertently included in the response.   Plaintiffs' amended and supplemented response to Apotex Interrogatory No. 1 clarifies that only claims of the '938 Patent have been asserted against Apotex, consistent with the original Complaint.  (*See* Nunnally Decl., Ex. 12 at 5-6; D.I. No. 1.)

In regard to Interrogatory Nos. 4, 5, and 7 on the issue of validity, Plaintiffs likewise supplemented their responses on July 7, referencing under Rule 33(d) the '938 Patent, its file history, and FDA submissions for evidence of the non-obviousness of the inventions of the '938 Patent, and also asserting secondary considerations of non-obviousness to rebut allegations of invalidity.   (*See* Nunnally Decl., Ex. 12 at 12-18.)   These responses are appropriately comprehensive for this stage of the litigation, and even more specific information in regard to the issue of validity will be timely provided in connection with the expert discovery process.

---

[4] Although P&G/WCCLLC offered Apotex a covenant not to sue that would have disposed of the potential for any controversy between the parties on the '513 Patent, Apotex insisted that it would only consider dropping its declaratory judgment action if a consent decree that P&G/WCCLLC found objectionable were entered.

2. *Plaintiffs Have Provided Appropriate Responses and Supplemental Responses to Other Interrogatories.*

Apotex also claims in its motion that Plaintiffs' responses to Interrogatory Nos. 8, 10, 15, 16, and 17 are insufficient. Plaintiffs, however, provided appropriate supplemental responses to Interrogatory Nos. 8, 10, and 16 on July 7, 2010 (as promised to Apotex during the parties' June 21 meet-and-confer call), rendering Apotex's deficiency allegations moot. (*See id.*, Ex. 12 at 18, 20-21, 23-24.) In regard to Interrogatory No. 15, Plaintiffs have properly identified Henry Vandenberg, Marketing Director for Actonel®, as the individual knowledgeable about the decision to market Once-a-Month Actonel®. Mr. Vandenberg, who is now employed by Warner Chilcott, previously worked in the same capacity at P&G and is competent to provide relevant testimony about Once-a-Month Actonel®. With respect to Interrogatory No. 17, which seeks the identification of expert witnesses whom Plaintiffs plan to call at trial but who will not submit expert reports, Plaintiffs do not have a present intention to use any such witnesses, but agreed in their original response to this interrogatory to supplement its response as appropriate.

Apotex also complains in its motion that the Plaintiffs responses to Interrogatory Nos. 12 and 13 are deficient. (Apotex. Br. at 8-9.) Plaintiffs maintain their original objections to these interrogatories, which purport to require the Plaintiffs to "[p]rovide a comparison of the properties of once monthly risedronate to other once monthly bisphosphonates" and to "[d]escribe the properties of once monthly risedronate that [Plaintiffs] contend are superior to other once monthly bisphosphonates." (*See* Nunnally Decl., Ex. 12 at 21-22.) As an initial matter, comparison of risedronate to other monthly bisphosphonates is not reasonably calculated to lead to the discovery of admissible evidence on the issues of infringement or patent validity, as other monthly bisphosphonate products are not prior art to the '938 Patent. Moreover, Apotex is not entitled to require that Plaintiffs undertake such a comprehensive analysis, as it would be

9

unduly burdensome to Plaintiffs. Finally, to the extent such overbroad requests touch on lesser included issues of secondary considerations of non-obviousness, these issues are and will be addressed in response to other interrogatories (*see id.*, Ex. 12 at 12-18) and in expert discovery.

> 3.    *Plaintiffs Reliance on Rule 33(d) is Appropriate.*

In several instances, Plaintiffs have indicated that documents responsive to Apotex's interrogatories will be produced and identified pursuant to Rule 33(d). In its motion, Apotex asserts that Plaintiffs' responses to Interrogatory Nos. 2, 3, 5, 6, 9, and 10 are deficient in that Plaintiffs have promised to make documents available without having yet done so, or without having identified particular documents. Plaintiffs, however, supplemented their responses to Interrogatory Nos. 2, 3, 5, and 10 on July 7, 2010 (again, as Plaintiffs promised to Apotex during the June 21 meet-and-confer call), incorporating references to specific documents under Rule 33(d) and/or to providing other substantive written responses. (*See id.*, Ex. 12 at 10-12, 14-15, 20-21.) Plaintiffs also indicated to Apotex on the parties' June 21 meet-and-confer call that they would further supplement certain interrogatory responses under Rule 33(d) once Plaintiffs' document production is complete and all appropriate documents may then be identified from Plaintiffs' production. Plaintiffs will thus supplement their response to Interrogatory No. 6 under Rule 33(d) and their response to Interrogatory No. 9 to the extent that there was, in fact, any disclosure of the inventions of the '938 Patent prior to filing. Plaintiffs may also further supplement their responses under Rule 33(d) once all documents have been produced.

**C.    Apotex's Motion Violates Local Rule 7.1.1 and Should Be Dismissed with Costs of Opposition Awarded to Plaintiffs.**

As described in detail above, Plaintiffs have fulfilled and will continue to fulfill their discovery obligations, consistent with representations explicitly made by P&G – and accepted by Apotex – *prior to* the filing of Apotex's Motion to Compel. Apotex's attempt to portray P&G as

uncooperative and its behavior as "dilatory" just days after the parties had reached a clear accord is disingenuous, overtly tactical,[5] and improper under Local Rule 7.1.1. Local Rule 7.1.1 requires that the moving party aver "that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion." D. Del. LR 7.1.1. Although Plaintiffs held a meet-and-confer call with Apotex in regard to the issues raised in Apotex's motion, Apotex totally disregarded the agreement reached regarding the outstanding discovery issues.    Apotex's disregard of this accord – and its filing of a motion to compel thereafter without warning – cannot reasonably be construed as the "reasonable effort" required by Local Rule 7.1.1. Moreover, following service of Plaintiffs' supplemental interrogatory responses and the production of some 430,000 additional pages of documents on July 7, 2010 as promised by P&G, Apotex has refused to withdraw its improper motion despite Plaintiffs' specific request that it do so. (*See* Nunnally Decl., Ex. 10). Accordingly, Plaintiffs respectfully request that the Court dismiss Apotex's unnecessary motion and award Plaintiffs the costs of opposing it. *See* D. Del. LR 7.1.1 ("[F]ailure to so aver [that reasonable effort has been made to reach agreement with the opposing party] may result in dismissal of the motion."); *Am. Health Sys., Inc. v. Crozier-Keystone Health Sys.*, 1994 WL 505034, at *1 (E.D. Pa. Sept. 12, 1994) (denying motion to compel and awarding opposing party's opposition fees and costs where movant failed to comply with the federal and local rules requiring it to confer with opposing counsel, and noting that "[d]iscovery disputes should not be referred to the Court unless such serious differences exist between counsel that further efforts of negotiation are pointless or unless Court intervention is necessary to resolve a disputed issue of law"); *Kelly v. Old Dominion Freight*

---

[5] Given that Apotex's Motion seeks to compel discovery it was already promised and which has, in fact, been provided, the only conclusion one can reach is that Apotex's Motion was filed to bolster Apotex's opposition to P&G's Motion to Substitute by creating the false appearance that P&G has not cooperated with discovery as promised. (*See* D.I. 69.)

*Line, Inc.*,  2010 WL 1676772, at \*7 (11th Cir. Apr. 27, 2010) (magistrate did not abuse its discretion in ordering moving party to pay attorneys' fees and costs incurred in opposing motions to compel where such motions "were both meritless and failed to comply with the procedural rules"), *petition for cert. filed*, 78 U.S.L.W. 3765 (U.S. June 16, 2010) (No. 09-1547).

## CONCLUSION

For the reasons set forth fully above, Plaintiffs respectfully request that Apotex's Motion to Compel be dismissed as moot and that costs of opposing this motion be awarded to Plaintiffs.

|  |  |
|---|---|
|  | */s/ Laura D. Hatcher* |
| OF COUNSEL: | Frederick L. Cottrell, III (#2555) |
| William F. Lee | cottrell@rlf.com |
| Vinita Ferrera | Steven J. Fineman (#4025) |
| Allen C. Nunnally | fineman@rlf.com (#5098) |
| Wilmer Cutler Pickering Hale and Dorr LLP | Laura D. Hatcher |
| 60 State Street | hatcher@rlf.com |
| Boston, MA 02109 | Richards Layton & Finger, P.A. |
| (617) 526-6000 | One Rodney Square |
|  | 920 N. King Street |
| David B. Bassett | Wilmington, DE 19899 |
| Wilmer Cutler Pickering Hale and Dorr LLP | (302) 651-7700 |
| 399 Park Avenue | Attorneys for Plaintiffs The Procter & Gamble |
| New York, NY 10022 | Company and Hoffmann-La Roche Inc. |
| (212) 230-8800 |  |
|  |  |
| Mark E. Waddell |  |
| Loeb & Loeb LLP |  |
| 345 Park Avenue |  |
| New York, NY |  |
| (212) 230-8800 |  |

Dated: July 19, 2010

RLFI 3591945v. 1

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

> Karen L. Pascale, Esquire
> Young Conaway Stargatt & Taylor
> The Brandywine Building
> 1000 West Street - 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
>
> Richard William Riley, Esquire
> Duane Morris LLP
> 1100 North Market Street
> Suite 1200
> Wilmington, DE  19801

I hereby certify that on July 19, 2010, I have sent by Electronic Mail, the foregoing document to the following non-registered participants:

> James Galbraith, Esquire
> Maria Luisa Palmese, Esquire
> Antony Pfeffer, Esquire
> Kenyon & Kenyon LLP
> One Broadway
> New York, NY 10004

> Steven E. Feldman, Esquire
> Husch Blackwell Sanders Welsh &
>   Katz LLP
> 120 South Riverside Plaza
> 22nd Floor
> Chicago, IL  60606

> /s/ Laura D. Hatcher
> Laura D. Hatcher (#5098)
> Hatcher@rlf.com