# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY and HOFFMAN-LA ROCHE INC., <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> Defendant. | C. A. No. 08-627 (JJF) <br><br> <u>CONSOLIDATED</u> |
| THE PROCTER & GAMBLE COMPANY and HOFFMAN-LA ROCHE INC., <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX INC. and APOTEX CORP. <br><br> Defendants. | C. A. No. 09-143 (JJF) |

## DECLARATION OF ALLEN C. NUNNALLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO APOTEX'S MOTION TO COMPEL

I, Allen C. Nunnally, hereby declare:

1. I am a Counsel employed by the law firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), which represents Plaintiff The Procter & Gamble Company ("P&G") in the above-captioned matter.

2. I submit this declaration in support of Plaintiff the Procter & Gamble Company's Reply to Defendant Apotex Inc.'s and Apotex Corp.'s Opposition to Plaintiff's Motion to Substitute Parties.

3. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently thereto.

4. A true and correct copy of the August 24, 2009 Purchase Agreement through which Warner Chilcott plc acquired the worldwide prescription pharmaceuticals business of P&G and its affiliates is attached hereto as **Exhibit 1**.

5. Warner Chilcott plc's acquisition of P&G's pharmaceutical business was officially completed on October 30, 2009, at which time Warner Chilcott Company, LLC acquired all intellectual property rights relevant to this lawsuit that were formerly held by P&G. As of October 30, 2009, P&G ceased to engage in any manufacturing, marketing, sales, and associated functions of prescription pharmaceutical products.

6. Following the sale of P&G's pharmaceutical business to Warner Chilcott plc and complete divestiture of all interests in that business, P&G has continued to collect and produce all relevant P&G custodians' files and P&G shared files in connection with this lawsuit.

7. On December 22, 2009, P&G made its first document production to Apotex, providing over 200,000 pages of responsive documents. A true and correct copy of correspondence from Allen Nunnally enclosing produced materials, dated December 22, 2009, is attached hereto as **Exhibit 2**.

8. In mid-December, Apotex proposed for the first time that the parties should reach a formal agreement on particular search terms to be used for electronic documents, which represent the vast bulk of relevant documents in this litigation. In light of this proposal, P&G suggested in mid-December that the parties work together to establish agreed terms. A true and correct copy of e-mail correspondence among Allen Nunnally, Hartwell Morse, Steve Feldman, and Louise Walsh, dated December 16, 2009, is attached hereto as **Exhibit 3**.

9. P&G formulated and sent to Apotex its own proposed search terms to be run against its electronic data on February 2, 2010. A true and correct copy of correspondence from

Allen Nunnally to Hartwell Morse and Louise Walsh, dated February 2, 2010, is attached hereto as **Exhibit 4**. A true and correct copy of the proposed list of search terms attached to Exhibit 4 is attached hereto as **Exhibit 5**.

10. After again receiving no response, P&G wrote to Apotex on February 12, 2010 and on February 18, 2010, urging Apotex to engage in discussions about search terms so that they could be finalized and executed, and so that documents could be reviewed for production as soon as possible. A true and correct copy of e-mail correspondence from Allen Nunnally to Hartwell Morse, Louise Walsh, and Sherry Rollo, dated February 12 and 18, 2010, is provided as **Exhibit 6**.

11. P&G's negotiation with Apotex over electronic search terms did not conclude until late March 2010.

12. Since finalizing search terms, outside counsel for P&G has used at least 17 attorneys to review more than 2.25 million pages of documents, representing over 80% of the total number of pages returned by Apotex's requested search terms.

13. On June 16, 2010, P&G produced the first yield of this production in the form of nearly 140,000 pages of documents. A true and correct copy of correspondence from Sadaf Abdullah enclosing produced materials, dated June 16, 2010, is attached hereto as **Exhibit 7**.

14. On June 17, 2010, counsel for Apotex sent a letter to counsel for Plaintiffs stating that P&G's document production and Plaintiffs' interrogatory responses were deficient. A true and correct copy of correspondence from Sherry Rollo to Allen Nunnally, dated June 17, 2010, is provided as **Exhibit 8**.

15. Counsel for P&G promptly scheduled a meet-and-confer teleconference with counsel for Apotex, which was conducted on June 21, 2010. A true and correct copy of

correspondence from Allen Nunnally to Sherry Rollo, Mark Waddell, Steve Feldman, Louise Walsh, and Sadaf Abdullah, dated June 21, 2010, is attached hereto as **Exhibit 9**.

16. During that call, counsel for P&G explained to counsel for Apotex that there was no disagreement about the documents that needed to be produced, that P&G was working diligently on that effort, and that it expected to produce the vast majority of its responsive documents by July 7, 2010 – with any remaining documents being produced as soon thereafter as possible on a rolling basis. P&G's counsel further explained that Plaintiffs would supplement their interrogatory responses, including contention interrogatory responses, by July 7, 2010, consistent with the Court's Scheduling Order. Counsel for Apotex raised no objection to the course of action laid out by counsel for P&G and did not indicate that there was a remaining dispute.

17. On July 6, 2010, counsel for Plaintiffs wrote to counsel for Apotex to express concern about the filing of Apotex's Motion to Compel that sought the production of documents and supplemental interrogatory responses Plaintiffs had already agreed to provide and requesting that Apotex withdraw that motion. A true and correct copy of e-mail correspondence from Steven Fineman to Richard Riley, dated July 6, 2010, is attached hereto as **Exhibit 10**.

18. On July 7, 2010, as promised on the parties' June 21 meet-and-confer teleconference, P&G produced an additional 430,000 pages of documents, representing the bulk of its then-remaining production, and Plaintiffs served supplemental interrogatory responses to Apotex's interrogatories, including contention interrogatories. A true and correct copy of correspondence from Sadaf Abdullah enclosing produced materials and dated July 7, 2010 is provided as **Exhibit 11**. A true and correct copy of Plaintiffs' Amended and Supplemental

Objections and Responses to Apotex Inc.'s and Apotex Corp.'s Interrogatories to Plaintiffs (No. 1-17), dated July 7, 2010, is attached hereto as **Exhibit 12**.

19. Counsel for P&G indicted to counsel for Apotex on the parties' June 21 meet and confer call that P&G would investigate why some apparently publicly available documents contain redactions and will reproduce improperly redacted documents, if any, in unredacted form.

20. On July 16, 2010, Plaintiffs produced a small number of documents that Apotex and Teva had identified in a searchable database. A true and correct copy of correspondence from Sadaf Abdullah to Louise Walsh, dated July 15, 2010, is attached hereto as **Exhibit 13**.

21. At the time P&G/Warner Chilcott's responses to Apotex's First and Second Sets of Request for Production were served, Plaintiffs believed that Apotex (and Teva) would be consenting to substitution of Warner Chilcott for P&G in this litigation. A true and correct copy of correspondence from Allen Nunnally to Sherry Rollo, dated Feb. 2, 2010, is attached hereto as **Exhibit 14**.

22. During the June 21, 2010 meet-and-confer teleconference, P&G confirmed that it and Warner Chilcott were producing relevant documents pertaining to the divestiture of P&G's pharmaceutical business to Warner Chilcott. A true and correct copy of Warner Chilcott's Objections and Responses to Apotex's First Set of Requests for the Production of Documents and Things to The Procter & Gamble Company (Nos. 1-61), dated January 11, 2010, is attached hereto as **Exhibit 15**. A true and correct copy of Warner Chilcott's Objections and Responses to Apotex's First Set of Requests for the Production of Documents and Things to The Procter & Gamble Company (Nos. 62-91), dated January 11, 2010, is attached hereto as **Exhibit 16**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2010.

                                                          */s/ Allen C. Nunnally*

                                                          Allen C. Nunnally

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

> Karen L. Pascale, Esquire
> Young Conaway Stargatt & Taylor
> The Brandywine Building
> 1000 West Street - 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
>
> Richard William Riley, Esquire
> Duane Morris LLP
> 1100 North Market Street
> Suite 1200
> Wilmington, DE 19801

I hereby certify that on July 19, 2010, I have sent by Electronic Mail, the foregoing document to the following non-registered participants:

> James Galbraith, Esquire
> Maria Luisa Palmese, Esquire
> Antony Pfeffer, Esquire
> Kenyon & Kenyon LLP
> One Broadway
> New York, NY 10004

> Steven E. Feldman, Esquire
> Husch Blackwell Sanders Welsh &
>   Katz LLP
> 120 South Riverside Plaza
> 22nd Floor
> Chicago, IL 60606

> /s/ Laura D. Hatcher
> Laura D. Hatcher (#5098)
> Hatcher@rlf.com