### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WARNER CHILCOTT COMPANY, LLC and HOFFMANN-LA ROCHE INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> *Defendant*. | C.A. No.1: 08-cv-0627-LPS <br> C.A. No. 1:11-cv-00081-LPS |
| WARNER CHILCOTT COMPANY, LLC and HOFFMANN-LA ROCHE INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> APOTEX, INC. and APOTEX CORP., <br><br> *Defendants*. | C.A. No. 09-143-LPS <br> (consolidated with C.A. No. 08-627-LPS) |
| WARNER CHILCOTT COMPANY, LLC and HOFFMANN-LA ROCHE INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN PHARMACEUTICALS, INC., <br><br> Defendant. | C.A. No. 10-285-LPS <br> (consolidated with C.A. No. 08-627-LPS) |
| THE PROCTER & GAMBLE COMPANY and HOFFMANN-LA ROCHE INC., <br><br> Plaintiffs, <br><br> v. <br><br> SUN PHARMA GLOBAL FZE, <br><br> Defendant. | C.A. No. 09-61-LPS <br> (consolidated with C.A. No. 08-627-LPS) <br><br> **PUBLIC VERSION** |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112 FOR INADEQUATE WRITTEN DESCRIPTION AND FAILURE TO ENABLE THE FULL SCOPE OF THE CLAIMS**

OF COUNSEL:

Steven E. Feldman
Louise T. Walsh
Philip D. Segrest, Jr.
Sherry L. Rollo
HUSCH BLACKWELL, LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Tel: (312) 655-1500

Dated: April 13, 2012
PUBLIC VERSION
Dated: April 26, 2012
1056200 / 37145

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Apotex, Inc. and Apotex Corp.*

*Filed on Behalf of All Defendants.*

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS .............................................................................. 1

SUMMARY OF THE ARGUMENT ............................................................................................. 2

STATEMENT OF FACTS .............................................................................................................. 3

ARGUMENT .................................................................................................................................... 8

I.     THE SPECIFICATIONS DO NOT DESCRIBE EXCLUDING A LOADING DOSE, EITHER WITH
       THE CLAIMED TWO-STEP METHOD NOR WITH THE CLAIMED "CONSISTING
       ESSENTIALLY OF" METHOD. ................................................................................................. 9

II.    THE'938 PATENT SPECIFICATION DOES NOT ENABLE THE FULL SCOPE OF THE
       CLAIMS AS INCLUDING SUBJECTS OTHER THAN HUMANS. ................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AK Steel Corp. v. Sollac and Ugine,*
  344 F.3d 1234 (Fed. Cir. 2003) .......................................................................................17, 19, 20

*ALZA Corp. v. Andrx Pharmaceuticals, LLC,*
  603 F.3d 935 (Fed. Cir. 2010) ......................................................................................................19

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
  239 F.3d 1343 (Fed. Cir. 2001) ......................................................................................................9

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003) ...............................................................................................11, 18

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
  598 F.3d 1336 (Fed. Cir. 2010) ...............................................................................................10, 16

*Atlantic Research Marketing Sys., Inc. v. Troy,*
  659 F.3d 1345 (Fed. Cir. 2011) ....................................................................................................10

*Automotive Techs. Int'l, Inc. v. BMW of North America, Inc.,*
  501 F.3d 1274 (Fed. Cir. 2007) ..............................................................................................17, 19, 20

*Boston Scientific Corp. v. Johnson & Johnson,*
  647 F.3d 1353 (Fed. Cir. 2011) ...............................................................................................10, 13

*Centocor Ortho Biotech, Inc. v. Abbott Labs.,*
  636 F.3d 1341 (Fed. Cir. 2011) ....................................................................................................11

*Fujikawa v. Wattanasin,*
  93 F.3d 1559 (Fed. Cir. 1996) ......................................................................................................14

*Hoffmann-La Roche Inc. v. Apotex Inc.,*
  C.A. No. 07-4417 (SRC)(MAS), 2012 WL 869572 (D.N.J., Mar. 14, 2012) ...........................1

*In re Herz,*
  537 F.2d 549 (C.C.P.A. 1976).........................................................................................................5

*In re Ruschig,*
  379 F.2d 990 (C.C.P.A. 1967).......................................................................................................13

*In re Schechter,*
  205 F.2d 185 (C.C.P.A. 1953).......................................................................................................11

*In re Wakefield,*
  422 F.2d 897 (C.C.P.A. 1970).......................................................................................................11

ii

*In re Wands,*
  858 F.2d 731 (Fed. Cir. 1988) ........................................................................................16, 18

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  481 F.3d 1371 (Fed. Cir. 2007) .......................................................................................19, 20

*LizardTech, Inc. v. Earth Resource Mapping, Inc.,*
  424 F.3d 1336 (Fed. Cir. 2005) ..............................................................................................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ..............................................................................................................8, 9

*Power Oasis, Inc. v. T-Mobile USA, Inc.,*
  522 F.3d 1299 (Fed. Cir. 2008) ..............................................................................................10

*Purdue Pharma L.P. v. Faulding Inc.,*
  230 F.3d 1320 (Fed. Cir. 2000) .......................................................................................13, 16

*Quad Envt'l Techs. Corp. v. Union Sanitary Dist.,*
  946 F.2d 870 (Fed. Cir. 1991) ..................................................................................................9

*Santarus, Inc. v. Par Pharmaceutical, Inc.,*
  720 F. Supp. 2d 427 (D. Del. 2010) ......................................................................................14

*Sitrick v. Dreamworks, LLC,*
  516 F.3d 993 (Fed. Cir. 2008) .........................................................................................16, 19

*Streck, Inc. v. Research & Diagnostic Sys., Inc.,*
  665 F.3d 1269 (Fed. Cir. 2012) .......................................................................................10, 18

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.,*
  279 F.3d 1357 (Fed. Cir. 2002) ................................................................................................9

*Univ. of Rochester v. G.D. Searle & Co., Inc.,*
  358 F.3d 916 (Fed. Cir. 2004) ................................................................................................10

*Vas-Cath, Inc. v. Mahurkar,*
  935 F.2d 1555 (Fed. Cir. 1991) .......................................................................................10, 16

*WMS Gaming Inc. v. Int'l Game Tech.,*
  184 F.3d 1339 (Fed. Cir. 1999) ..............................................................................................17

### FEDERAL STATUTES

35 U.S.C. § 103 ..............................................................................................................................1

35 U.S.C. § 112 .....................................................................................................................passim

35 U.S.C. § 271(e)...........................................................................................................................1

iii

FEDERAL RULES

FED. R. CIV. P. 56 ...........................................................................................................................9

iv

Defendants Apotex Corp. and Apotex, Inc., Teva Pharmaceuticals USA, Inc., Mylan Pharmaceuticals, Inc. and Sun Pharma Global FZE respectfully submit this Brief in Support of Their Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112 for Inadequate Written Description and Failure To Enable the Full Scope of the Claims.  In support of this motion, Defendants rely on the materials in Defendants' Appendix ("D-APP") filed herewith, including the claim construction order (D.I. 290) [D-APP-196] and opinion (D.I. 289) [D-APP-199].

## NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement suit under 35 U.S.C. § 271(e).  Defendants including filed abbreviated new drug applications seeking approvals to market generic versions of the prescription drug Actonel® (risedronate sodium) in formulations including the tablets containing 150 mg of the salt.  Plaintiffs Warner Chilcott Company, LLC and Hoffmann-La Roche Inc. brought suit, claiming that the filings and attendant certifications infringed patents including US Patent No. 7,192,938 ("the '938 patent") [D-APP-10] and US Patent No. 7,718,634 ("the '634 patent") [D-APP-17].  The court held a Markman hearing June 14, 2011, and issued a Memorandum Opinion (D.I. 289) [D-APP-199] and Order (D.I. 290) [D-APP-196] regarding claim construction.  A proposed Final Pretrial Order is due June 18, 2012, the Court has scheduled a Final Pretrial Conference on July 2, 2012, and a one-week bench trial is scheduled to commence on July 23, 2012.  *See* Amended Consolidated Rule 16 Scheduling Order ¶¶ 11, 13 [D-APP-1, at 8-9][1]

---

[1]As a preliminary matter, this motion does *not* address all of Defendants' invalidity defenses. For example, it is Defendants' position that the asserted claims of the '938 patent and the '634 patent are invalid for obviousness under 35 U.S.C. § 103.  Recently the court in New Jersey considering patents in the same family found there was a substantial question of obviousness under 35 U.S.C. § 103 and denied plaintiffs' preliminary injunction motion. *Hoffmann-La Roche Inc. v. Apotex Inc.*, C.A. No. 07-4417 (SRC)(MAS), 2012 WL 869572, at *9 (D.N.J., Mar. 14,

## SUMMARY OF THE ARGUMENT

**Insufficient Written Description:** Each of the asserted claims in the patents in suit should be held invalid under 35 U.S.C. § 112, ¶ 1, because they contain negative limitations not described in their common specification or their original common priority application. Patent applications must include *when filed* a written description of the subject matter considered to be the invention. Here, the specifications of the patents in suit do not describe the claimed method as excluding a loading dose, either by describing a two-step method of commencing and continuing or a one-step "consisting essentially of" method. However, in response to a rejection over prior art that disclosed monthly dosing (along with an additional loading dose) applicants amended their claims to recite a two-step method, or "consisting essentially of" language, which they said excluded the possibility of a loading dose — even though the specifications do not describe that exclusion. Excluding a loading dose from the method is therefore a *negative limitation* that is not supported by the written description of what the applicants regarded as their invention.

**Failure to Enable the Full Scope of the '938 Patent Claims:** The asserted claims of the '938 patent should be held invalid under 35 U.S.C. § 112, ¶ 1, because they are not enabled to their full scope, which includes non-human "subjects." Patent applications must enable the *full scope* of the claims. The claims of the '938 patent broadly encompass any "subject," human or animal, that can have osteoporosis. Its specification, however, does not provide an enabling disclosure to practice the claimed method, in the claimed dosage ranges, on all non-human subjects.

---

2012) ("Despite the presumption of validity of issued patents, Defendants have persuaded this Court that it is more likely than not that they will be able to prove the patents at issue to be invalid due to obviousness, by clear and convincing evidence, at trial.") [D-APP-237, at 252]. Defendants will present those other grounds of invalidity at trial, if needed. The instant motion instead addresses certain formal grounds of invalidity under 35 U.S.C. § 112.

2

## STATEMENT OF FACTS

It is undisputed that the patentees amended their claims during prosecution to recite a two-step method or to include "consisting essentially of" language to *exclude* the use of a loading dose from their claimed methods. This was in response to a prior art rejection over Schofield et al., US 2003/0118634 [D-APP-218].[2] The first U.S. application to which the patents in suit claim priority when filed made no mention of a loading dose, a commencing step and a continuing step, or claims "consisting essentially of" only the single recited step. Pub. No. 2003/0225039, [D-APP-218.] It described, instead, a monthly dosing regimen (without reference to the inclusion or exclusion of a loading dose) and claimed the method as "comprising", *i.e.*, including but not limited to, the recited step. *Id.*

During prosecution, the Examiner identified as pertinent the Schofield publication [D-APP-218], which disclosed a method that included monthly dosing with an oral bisphosphonate. [D-APP-44, at 46.] The examiner rejected all pending claims over Schofield, explaining, inter alia: "(Note that the loading period of the prior art *is not excluded* from the scope of the instant claims, which employ the open ended transitional phrase 'comprising')." *See* [D-APP-48 at 50-51 (emphasis added.)]

Unlike the patents in suit, the Schofield application described and claimed a two-step method: a loading regimen and a maintenance regimen. [D-APP-218 at 220 ¶¶ [0017]–[0021]] The "loading dose" regimen in Schofield means "the dose initially administered to the patient" during the loading period (*Id.* ¶¶ [0012]–[0013]) and the "maintenance dose" regimen in that patent refers to "the dose administered to a subject following the loading period" (*Id.*, ¶¶ [0014]-[0015]). Because Schofield taught that the maintenance dose could be administered monthly, a

---

[2]Regardless of whether the claims exclude a loading dose, they would still have been obvious over various references, including Schofield.

3

"comprising" claim that *included* the step of monthly dosing but did not *exclude* any other steps would read on the monthly maintenance dose regimen disclosed in Schofield.

In response to that rejection, applicants amended the claims to recite a two-step method with a "commencing step" and a "continuing step" and added new claims using "consisting of" transitional language. [D-APP-55, at 60.] Although applicants argued (somewhat superfluously) that the claims had not been obvious over Schofield before the amendment, they also remarked that to advance prosecution they had "amended the present claims *to exclude the possibility of employing a loading dose . . . .*" and further remarked, "Claims 32 and 34 to 46 *exclude a loading dose* by requiring the administration of a first dose . . . followed by monthly administration of the same." *Id.* at D-APP-62 (emphasis added). Further, "(n)ew claims 52 to 57 exclude the method of Schofield by employing 'consisting of' transitional language." *Id.*

The continuation application that issued as the '938 patent in suit (Pub. No. US 2005/0075319) [D-APP-180] when filed likewise did not mention a loading dose, a commencing step, and continuing step, or claims consisting of only the one described step. Instead, it disclosed and claimed a method "comprising," *i.e.*, including but not limited to, a monthly administration step, without excluding any other steps or regimens. During prosecution, the examiner rejected these claims, too, over Schofield, noting that "it is the administration during the maintenance period which is not patently distinct from the presently claimed method." *See* Office Action Summary [D-APP-26, at 30.]

In response, the applicants amended the claims to recite a two-step method with a "commencing" step and a "continuing" step. *See* Remarks, pp. 6-8 [D-APP-262 – 264] Although applicants again argued that the claims had not been obvious before being amended, they also again remarked that to advance the prosecution they had "amended the present claims

4

to *exclude the possibility of employing a loading dose* . . . .". *Id.* (emphasis added) (D-APP-262, at 263] Applicants again remarked that the two-step claims "exclude a loading dose." *Id.*

In similar fashion, the continuation application that issued as the '634 patent did not, when filed, mention a loading dose, a commencing step, a continuing step, or a method "consisting essentially of" only the one recited step. Instead, it disclosed and claimed a method "comprising," *i.e.*, including but not limited to, a monthly administration step, without excluding any other regimens or steps. *See* Pub. No. 2008/0249069, [D-APP-186.] Applicants once again amended their claims in order affirmatively to exclude the possibility of a loading dose, and remarked:

> Applicants wish to point out that independent claim 2 of the present application includes the term "commencing," as do some of the issued claims in U.S. Patents 7,192,938 and 7,410,957. Consistent with the prior '938 and '957 patents, this term is employed solely *to exclude the regimen disclosed by Schofield* (US2003/0118634) which requires a loading dose administered over 7 to 180 days followed by maintenance dosing. Thus, present claims 2 to 5 exclude Schofield's loading dose by requiring the administration of a first dose, on a single day, of a pharmaceutical composition comprising about 150 mg ibandronic acid or an amount of a pharmaceutically acceptable salt thereof that is equivalent to about 150 mg of ibandronic acid, followed by monthly administration of the same.
>
> New claims 6 to 9 *exclude the method of Schofield* by employing "consisting essentially of" transitional language. As noted in MPEP 2111.03, the transitional phrase "consisting essentially of" limits the scope of a claim to the specified materials or steps "and those that do not materially affect the basic and novel characteristic(s)" of the claimed invention. *In re Herz*, 537 F.2d 549, 551-52, 190 USPQ 461, 463 (CCPA 1976) (emphasis in original). This language is used in claim 6 only to distinguish from the use of loading doses over 7 to 180 days, as disclosed by Schofield.

10/14/09 Amendment, p. 5 (emphasis added) [D-APP33, at 38.]

In claim construction briefing before this court, plaintiffs admitted that the claims as amended "specifically exclude the Schofield method that includes a 'loading dose'." See Plaintiffs' Opening Brief In Support Of Their Proposed Claim Construction For U.S. Patent Nos.

5

7,192,938 and 7,718, 634 (D.I. 156 at p. 24), [D-APP-64, at 93.] In construing the claims, the Court noted:

> The remainder of the specification adds little with respect to this dispute because the claims were *redrafted as two-step methods* to overcome an obviousness rejection over Schofield et al., U.S. Pub. No. 2003/0118634 ("Schofield") (see D.I. 168 Ex. Eat AP-RISE0004551-53), although the substance of the claimed methods was not changed (see id. at AP-RISE0004657-58). . . . A person of ordinary skill in the art would understand that the claims are drawn to a specific regimen and would appreciate that anything occurring before the claimed regimen is outside the scope of the claims. (See D.l. 157 at ¶ 44.)
>
> The Court's construction is also supported by the prosecution history. As noted, *the claims were redrafted as two-step methods to avoid reading on Schofield*; the first step of the claimed method is different from that of the method disclosed in Schofield. (See D.I. 168 Ex. E at AP-RISE000457-58.)

*Id.* (D.I. 289 at 8–9), [D-APP-199, at 209-210 (emphasis added.)] The loading dose of Schofield that occurred before monthly administration of the maintenance dose is thus "outside the scope of the claims" (as stated in the court's opinion) in the sense that the claims expressly exclude it. The prosecution history is clear that the issued claims are not in effect silent as to a loading dose, but instead affirmatively exclude preceding monthly administration with a loading dose.

The patent specifications do not disclose any embodiment that affirmatively excludes a loading dose before monthly dosing. Moreover, they offer no suggestion that there are benefits, or anything inventive, about a treatment method of monthly dosing not preceded by a loading dose. On the contrary, they teach that combined forms of treatment and even combinations with non-monthly dosing regimens *are* acceptable. *See* '634 patent, col.5, ℓℓ.35–48 [D-APP-17]

Plaintiffs' expert witness Dr. Bilezikian agreed that the applicants amended the claims, in both patents, to exclude the possibility of a loading dose. [D-APP-215 at 217; D-APP-224 to D-APP-232]. Another of Plaintiffs' experts, Dr. Dafoitis, also agreed that the claims exclude the possibility of a loading dose. [D-APP-233, at 235.] And at the claim construction hearing, plaintiffs' counsel as well admitted that Claims 9 and 10 affirmatively exclude a loading dose:

The applicants *explicitly amended the claims to exclude the loading dose* by Schofield by requiring monthly administration of 100 to 150 milligrams of bisphosphonic acid, and they said it as explicitly as one can say it.

"New claims 40 to 54 exclude the method of Schofield by employing 'consisting of' traditional language. Thus, the present claims cannot properly be said to encompass the maintenance dosing of Schofield."

That was the purpose of the language change to the claim.

(D.I. 205 at 18, (emphasis added) [D-APP-169, at 173].)

When the examiner made the rejections over Schofield, the applications included, for example, the following claims:

A method for treating or inhibiting osteoporosis comprising orally administering to a subject in need of such treatment. once monthly, a pharmaceutical composition comprising from about 100 mg to about 150 mg of bisphosphonic acid or an amount of a pharmaceutically acceptable salt thereof that is equivalent to about 1 00 mg to about 150 mg of said bisphosphonic acid.

[D-APP-257, at 258]. In response to the rejection, applicants amended that claim as follows:

A method for treating or inhibiting osteoporosis comprising **commencing treatment** by orally administering to a subject in need of such treatment, once monthly, a first dose, on a single day, of a pharmaceutical composition comprising from about 100 mg to about 150 mg of bisphosphonic acid or an amount of a pharmaceutically acceptable salt thereof that is equivalent to about 100 mg to about 150 mg of said bisphosphonic acid and **continuing said treatment** by orally administering, **once monthly** on a single day. a pharmaceutical composition comprising from about 100 mg to about 150 mg of bisphosphonic acid or an amount of a pharmaceutically acceptable salt thereof that is equivalent to from about 100 mg to about 150 mg of bisphosphonic acid.

[D-APP-55 at 56, emphasis added]. Applicants also added the new claim:

A method for treating or inhibiting osteoporosis **consisting of** orally administering to a subject in need of such treatment, once monthly, a pharmaceutical composition comprising from about 100 mg to about 150 mg of bisphosphonic acid or an amount of a pharmaceutically acceptable salt thereof that is equivalent to about 100 mg to about 150 mg of said bisphosphonic acid.

[D-APP-55, at 58, emphasis added.]

The attorney who prosecuted these patent applications testified that he made these claim

amendments to exclude the possibility of a loading dose. [D-APP-192.] In fact, he admitted that the claims were amended to exclude a loading dose even though the specification says nothing about a loading dose:

> Q. But the word loading — the phrase "loading dose" doesn't appear in the '634 specification anywhere, does it?
>
> A. Loading dose *isn't part of the invention*. The specification needs to disclose what is in the claims, not what's not in the claims.
>
> Q.   But so there's no express exclusion of a loading dose in the '634 specification?
> MS. PROCTOR: Object to the form of the question.
> MR. MACRAE: Same objection.
>
> A. The words "loading dose" are not in the specification, but the claims by their terms exclude the loading dose of Schofield.

[D-APP-195, emphasis added]. The patent never mentions a loading dose, and nothing in the patent describes performing the method of monthly administration without, *i.e.*, while excluding a previous loading dose. [D-APP-224 at 228] As explained below, the prosecuting attorney was mistaken, as a matter of law, on the proposition that the specification need not disclose what the claims exclude, *i.e.*, negative limitations.

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be — or, alternatively, is — genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or

8

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

The Court must independently determine the validity of the patents in suit, and may not merely defer to the proceedings before the patent office. There is no rule of law that a patent cannot be invalid over art before the examiner or for issues that were mentioned in prosecution. The maxim that ambiguous claims may be construed to preserve their validity is not to the contrary. *See Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) ("Fairness and the public notice function of the patent law require courts to afford patentees the full breadth of clear claim language, and bind them to it as well. Consequently, where such claim language clearly reads on prior art, the patent is invalid."). "The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Envt'l Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991). A claim must be construed before determining its validity, just as it is first construed before deciding infringement, and claims must be construed the same way for determining both validity and infringement. *E.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

**I.      The Specifications Do Not Describe Excluding A Loading Dose, Either With The Claimed Two-Step Method Nor With The Claimed "Consisting Essentially Of" Method.**

Whether a claim satisfies the written description requirement poses a question of fact "but is amenable to summary judgment in cases where no reasonable fact finder could return a

9

verdict for the non-moving party." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (affirming summary judgment); *Atlantic Research Marketing Sys., Inc. v. Troy*, 659 F.3d 1345, 1355 (Fed. Cir. 2011) (affirming summary judgment); *Power Oasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (affirming summary judgment); *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1363 (Fed. Cir. 2011) (affirming summary judgment).

Written description is a statutory requirement set forth in 35 U.S.C. § 112, which provides, in relevant part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . .

35 U.S.C. § 112, ¶ 1 (emphasis added). The written description "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (citation and quotations omitted). The test is whether the disclosure "conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* This test requires an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.*

This requirement is designed to protect the public (and competitors) by preventing patentees from later including in their claims subject matter that they did not genuinely possess at the time they filed their patent applications. *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1561–62 (Fed. Cir. 1991). The written description requirement serves both a teaching and policing function for the public. The teaching function requires a meaningful disclosure. *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 928–29 (Fed. Cir. 2004). The policing

10

function prevents an applicant from later adding something he did not invent as being a part of his invention. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).

To satisfy the written description requirement, an applicant must convey with "reasonable clarity" to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention as claimed, and demonstrate that possession by disclosure in the specification of the patent. *E.g., Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011). The written description must by itself describe the full scope of the claimed invention with all its recited limitations.

The claim amendments in response to the rejection over Schofield redefined the claimed method (Memorandum Opinion, pp. 8 - 9 (D.I. 289) [D-APP-199, 209 - 210]) as something that *expressly excluded* administering a loading dose before monthly dosing. The claims were changed so they would not read on a monthly dosing regimen when preceded by a loading dose. This is, in effect, a *negative limitation,* limiting the claims to monthly dosing *except when preceded by a loading dose.* This negative limitation is embedded in the two-step structure of the asserted claims in the '938 patent and Claim 9 in the '634 patent, and in the "consisting essentially of" transitional phrase in Claim 10 of the '634 patent. Whatever the exact contours of those claims' in terms of a treatment episode or the like, they definitely mean monthly dosing *without a loading dose beforehand.*

At one time, such negative limitations were not allowed as being indefinite. *See generally In re Schechter*, 205 F.2d 185, 187–88 (C.C.P.A. 1953) ("In the light of the prior art of record, the italicized portion of claim 17 is an attempt by appellants to claim their invention by excluding what they did not invent rather than by particularly and distinctly pointing out what

11

they did invent."). Negative limitations are now permissible, so long as claims set forth definitely the boundaries of the patent protection sought. *See generally, In re Wakefield*, 422 F.2d 897, 904 (C.C.P.A. 1970) ("We fail to see how this renders the claims indefinite. . . . The scope of the claim is still definite, however, because each recited limitation is definite."). However, any such negative limitation must have been ***described in the original disclosure***. The Manual of Patent Examining Procedure ("MPEP") explains:

> Any negative limitation or exclusionary proviso **must have basis in the original disclosure.** If alternative elements are positively recited in the specification, they may be explicitly excluded in the claims. *See In re Johnson*, 558 F.2d 1008, 1019, 194 USPQ 187, 196 (CCPA 1977) ("[the] specification, having described the whole, necessarily described the part remaining."). *See also Ex parte Grasselli*, 231 USPQ 393 (Bd. App. 1983), *aff'd mem.*, 738 F.2d 453 (Fed. Cir. 1984). ***The mere absence of a positive recitation is not basis for an exclusion.*** Any claim containing a negative limitation which does not have basis in the original disclosure should be rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. Note that a lack of literal basis in the specification for a negative limitation may not be sufficient to establish a prima facie case for lack of descriptive support. *Ex parte Parks*, 30 USPQ2d 1234, 1236 (Bd. Pat. App. & Inter. 1993). See MPEP § 2163–§ 2163.07(b) for a discussion of the written description requirement of 35 U.S.C. 112, first paragraph.

MPEP 2173.05(i) (emphasis added) [D-APP-236].

Here, it is undisputed that applicants amended the claims during prosecution to exclude the possibility of a loading dose administered before beginning the monthly administration of bisphosphonates. It is also undisputed that the specifications of the patents in suit say ***nothing*** at all about a loading dose, and neither includes nor excludes a loading dose from the method described as the invention. Roche's patent attorney testified that the specification need only describe what the invention is, not what it is not, and that the loading dose was not part of the invention. [D-APP-192 at 195] Neither the inclusion nor the exclusion of a loading dose was any part of what the applicants regarded as their invention, and is therefore not described in the

12

specification. But, the specification must include a description of every limitation in the claim, including negative limitations. Accordingly, if the **exclusion** of a loading dose was not part of what the applicants regarded as their invention, and is not described in the specification as being the invention, then these claims later drafted to exclude the possibility of a loading dose are invalid for lack of written description under 35 U.S.C. § 112.

The specification must be sufficiently specific and clear that one skilled in the art reading the specification can "immediately discern" the specific limitation at issue in the claims — here, the exclusion of a loading dose. It is not enough to disclose a broad genus that includes a specific claimed species, or examples that might permit a particular claimed property to be derived or calculated. The specification must not only provide guidance pointing the person of skill in the art to the specific species or property (and the specification here does not provide even that), it must also point to such features *as part of the invention*. *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326–27 (Fed. Cir. 2000) (citing *In re Ruschig*, 379 F.2d 990, 994–95 (C.C.P.A. 1967)).

In *Purdue Pharma*, the Federal Circuit warned that there must be "blaze marks" directing the person of ordinary skill to a particular feature as part of the invention. 230 F.3d at 1326. In that case, the claims at issue had invoked a particular ratio to avoid the prior art. *Id.* at 1327–28. Two of the seven examples in the patent satisfied that ratio. *Id.* at 1327. But the Federal Circuit nevertheless invalidated the claims because, while the patent specification and examples provided enough data from which one of ordinary skill could piece together the ratio, neither the text accompanying the examples, nor anything else in the specification, in any way emphasized the ratio as being part of the invention. *Id.* at 1327–28. It was also problematic that the specification included examples that did not satisfy the claimed ratio, but failed to explain to the

13

skilled artisan which examples embodied the claimed invention and which did not, particularly in the context of other potentially relevant disclosed parameters. *Id.* at 1326; *see also Boston Scientific*, 647 F.3d at 1367–69 (disclosure of genus did not disclose sub-genus). The Federal Circuit has explained why it does not uphold patents which claim narrowly but disclose broadly — otherwise,

> [A] "laundry list" disclosure of every possib[ility] . . . would constitute a written description of every species in the genus. This cannot be because such a disclosure would not "reasonably lead" those skilled in the art to any particular species.

*Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571 (Fed. Cir. 1996).

Failure to describe in the specification what is later added to the claims as a negative limitation renders the claims invalid for lack of written description. *Santarus, Inc. v. Par Pharmaceutical, Inc.*, 720 F. Supp. 2d 427, 444 (D. Del. 2010) ("Since this limitation is not supported and claim 1 is the only independent claim of the '772 Patent, the asserted claims of the '772 Patent are . . . invalid for lack of written description."). In *Santarus,* the claims included the negative limitation "wherein the composition contains no sucralfate," but the specification mentioned sucralfate only in disclosing the disadvantages of that alternative, and did not describe its exclusion as being part of the invention. Here, the specification does not mention a loading dose **at all**, even to describe any alleged disadvantages, and *a fortiori* does not describe the exclusion of a loading dose as being any part of the invention. Just as the claims in *Santarus* that excluded sucralfate were invalid for lack of written description, so, too, the claims here that exclude a loading dose are invalid for lack of written description.

There is also nothing anywhere in the specification that describes the invention as being a two-step method. An example of a specification that actually does describe a two-step method is the Schofield application, paragraphs [0017] to [0021]. [D-APP-218, at 220]. The applicants

14

here introduced their own two-step claims in response to a rejection over that disclosure. The problem, however, is that they never described *their* alleged invention as a method having two steps, or more than one step. The specifications of the patents in suit say nothing about the method having two steps. They say nothing about commencing or continuing. Accordingly, a two-step method is not described in those specifications as originally filed and the claims reciting such a two-step method are invalid for lack of written description. Moreover, if the limitations of an independent claim are not described in the specification, claims dependent on that claim (such as the other asserted claims of the '938 patent), which incorporate all the limitations of the independent claim, necessarily also lack written description. *E.g., LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1343–47 (Fed. Cir. 2005) (holding dependent claims invalid for lack of support of limitations in the independent claim).

Similarly, there is nothing anywhere in the '634 patent specification that describes the invention as "consisting essentially of" a single step, or describes a loading dose as materially affecting the basic and novel properties of the claimed method. It is undisputed that in patent parlance the transitional phrase "consisting essentially of" in a claim excludes other unrecited steps that would materially affect the basic and novel properties of the claimed invention. Here, applicants added this transitional phrase to exclude the step of a loading dose. There is nothing in the '634 patent's specification, however, that would allow a person of ordinary skill in the art reading it to discern that the inclusion of a loading dose step would materially affect any alleged basic and novel properties. The '634 patent specification never says anything about a loading dose. It also never says anything identifying the alleged basic and novel properties of the claimed method. Accordingly, the "consisting essentially of" method that excludes a loading dose is not described in the specification as originally filed and Claim 10 of the '634 patent

15

reciting that method is invalid for lack of written description.

This principle is at the heart of modern patent practice. An applicant may refine claims during prosecution, but *only* by adding additional details to the claims that were included in the specifications. If an applicant has to add some new matter that was never described (such as if the applicant decides he meant to exclude a loading dose), the application has to file a continuation-in-part application, which gets a new application number, and loses the benefit of the earlier filing date for claims relying on whatever is added in the continuation in part.

The Federal Circuit *en banc* emphasized in *Ariad* that "the purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" 598 F.3d at 1353–54 (citations omitted). For that reason, the inventor must "recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Vas-Cath,* 935 F.2d at 1561. Roche's claims do overreach, as the distinction drawn by the claims is not set forth in the specification. As stated in *Purdue Pharma,* "[o]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the original disclosure." 230 F.3d at 1326–27. The skilled artisan looking for blaze marks in the patents in suit will do so in vain.

## II.     The '938 Patent Specification Does Not Enable The Full Scope Of The Claims As Including Subjects Other Than Humans.

Enablement of the full scope of the claims poses a question of law, based on underlying facts. *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008) ("Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112, ¶ 1 is a question of law, reviewed de

16

novo, based on underlying facts, which are reviewed for clear error.") (affirming summary judgment); *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1238–39 (Fed. Cir. 2003) ("Whether the subject matter of a patent claim satisfies the enablement requirement of 35 U.S.C. § 112, ¶ 1, is a question of law based on underlying facts, *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988), and, because a patent is presumed to be valid, 35 U.S.C. § 282 (2000), the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence, *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999).") (affirming summary judgment); *Automotive Techs. Int'l, Inc. v. BMW of North America, Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007) ("Whether the subject matter of a patent claim satisfies the enablement requirement under 35 U.S.C. § 112, ¶ 1 is a question of law, reviewed *de novo*, based on underlying facts, reviewed for clear error.") (affirming summary judgment).

The term "subject," as it appears in Claims 1, 6, 8–9, and 13–16 of the '938 patent, means "a human subject or any other animal subject that can have or be diagnosed with osteoporosis." Order, ¶5 (D.I. 290) [D-APP-196 at 198]. This construction was required by the claim language ("which does not indicate any exclusion of animals from being subjects"); by the specification ("which refers to administering bisphosphonic acids or salts thereof 'to a mammal'); by the prior art of record which referred to osteoporosis in animals (*E.g.*, U.S. Patent No. 4,761,406, col.2, ll. 67–68, [D-APP-150]; U.S. Patent No. 3,962,432 at [57], col.1 ll.6–7, [D-APP-162); and by the plain meaning of "subject" in *Dorland's Illustrated Medical Dictionary* 1559 (27th ed. 1988) ("defining 'subject' as 'a person or animal subjected to treatment, observation, or experimentation') [D-APP-254 at 256]. *See* Memo. Opin. at 9-10 (D.I. 289) [D-APP-199 at 210 - 211.]

Dr. Yates has previously submitted declarations describing his own work with

17

osteoporosis in horses. (D.I. 166 ¶¶ 27–28) [D-APP-131 at 145–146]. His declaration also discussed other references which list animals affected by osteoporosis as including monkeys, great apes, humans, horses, pigs, cattle, sheep, goats, cats, and dogs. *Id.* at ¶¶ 29 – 31 [D-APP-131, at 146 – 148]. It is undisputed that the proper dose of a bisphosphonate depends in part on the age, size, gender, and condition of the subject being treated. *See* U.S. Patent No. 5,994,329, col. 12, ll. 34 – 49 [D-APP-106, at 121]. While a person of ordinary skill in the art may be able to determine the appropriate dosage range of bisphosphonates for any given species through routine experimentation, the specific ranges of bisphosphonate recited in the '938 patent claims[3] are for humans, not for all other non-human subjects, even though the scope of the claims in that patent are much broader and do encompass non-human subjects.

In determining whether a particular embodiment within the scope of the claims is enabled, the Court may consider factors such as "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Wands*, 858 F.2d at 736–37. However, "it is not necessary that a court review all the *Wands* factors to find a disclosure enabling. They are illustrative, not mandatory." *Streck*, 665 F.3d at 1288 (quoting *Amgen*, 927 F.2d at 1213).

The Court has repeatedly struck down claims which enabled only part of the scope they covered:

- The Federal Circuit affirmed a judgment of invalidity for lack enablement where claims

---

[3]This defect appears in the claims of the '938 patent only, not those of the '634 patent. When Roche later prosecuted the '634 patent, it limited the claims to women with postmenopausal osteoporosis.

covered both osmotic and non-osmotic dosage forms, but did "not enable the full scope of the claims, namely non-osmotic oral dosage forms with ascending release rates." *ALZA Corp. v. Andrx Pharmas, LLC*, 603 F.3d 935, 943 (Fed. Cir. 2010).

- The Court similarly upheld a judgment of invalidity for lack of enablement of claims for a front loading injection device. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007). The full scope of the claims there covered injectors, both with and without a pressure jacket, but enabled only what the patent called its preferred embodiment "*viz.*, an injector with a pressure jacket." *Id.*

- The Federal Circuit has explained, "Enabling the full scope of each claim is 'part of the *quid pro quo* of the patent bargain.'" *Sitrick*, 516 F.3d at 999 (quoting *AK Steel*, 344 F.3d at 1244). The claims in *Sitrick* were invalid because they covered both video games and movies, but enabled only video games and not movies.

- Again, "as part of the *quid pro quo* of the patent bargain, the applicant's specification must enable one of ordinary skill in the art to practice the full scope of the claimed invention." *AK Steel,* 344 F.3d at 1244. Although the claims in *AK Steel* "read on steel strips containing either Type 1 or a Type 2 aluminum coating" and required "that the coating wet well," the patent enabled that result only for Type 2 aluminum strips, not Type 1.

- It is not sufficient to enable only one embodiment for a claim that reads on multiple embodiments. *Automotive Techs.*, 501 F.3d at 1285 ("We also reject ATI's argument that because the specification enables one mode of practicing the invention, *viz.,* mechanical side impact sensors, the enablement requirement is satisfied."). The claims in *Automotive Techs.* were invalid because they read on "both mechanical and electronic side impact

19

sensors," but the specification enabled only the mechanical embodiment. *Automotive Techs.*, 501 F.3d at 1285 ("Thus, in order to fulfill the enablement requirement, the specification must enable the full scope of the claims that includes both electronic and mechanical side impact sensors, which the specification fails to do.").

The specification in the '938 patent and the '634 patent do not enable the claimed method (with only 100 mg to 150 mg of bisphosphonate as the permissible, claimed range) for *all* non-human subjects from cats and dogs to horses and elephants. Just as the patents in *ALZA* did not enable non-osmotic dosage forms, and in *Liebel-Flarsheim* did not enable injectors without a pressure jacket, and in *Sitrick* did not enable movies, and in *AK Steel* did not enable Type 1 aluminum coatings, and in *Automotive Techs.* did not enable electronic side impact sensors, so too the patent claims here are not enabling for all non-human subjects and are therefore invalid. It also does not matter whether the embodiment allegedly enabled is the one the patentee actually cared about or that is accused of infringement. In all of these cases, it is the over-breadth of the claims that applicants drafted which renders the claims invalid. *Liebel-Flarsheim*, 481 F.3d at 1380 ("The motto, 'beware of what one asks for,' might be applicable here.").

## CONCLUSION

For the foregoing reasons, the claims of the '938 and '634 patents are invalid under 35 U.S.C. § 112, first paragraph, for lack of written description of the invention as excluding a loading dose. The claims of the '938 patent are invalid for failure to enable the full scope of the claims, including non-human subjects. Defendants respectfully requests entry of judgment accordingly.

20

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Steven E. Feldman
Louise T. Walsh
Philip D. Segrest, Jr.
Sherry L. Rollo
HUSCH BLACKWELL, LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Tel: (312) 655-1500


Dated: April 13, 2012
PUBLIC VERSION
Dated: April 26, 2012
1056200 / 37145

By:  */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Apotex, Inc. and Apotex Corp.*

*Filed on Behalf of All Defendants.*

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 26, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on April 26, 2012, the attached document was Electronically Mailed to the following person(s):

Frederick L. Cottrell , III
Steven J. Fineman
Jaclyn C. Levy
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com
fineman@rlf.com
levy@rlf.com
*Attorneys for Plaintiffs*

William F. Lee
Wyley Sayre Proctor
Vinita Ferrera
Richard Ewenstein
Bo Han
Allen Nunnally
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109
william.lee@wilmerhale.com
wyley.proctor@wilmerhale.com
vinita.ferrera@wilmerhale.com
richard.ewenstein@wilmerhale.com
bo.han@wilmerhale.com
allen.nunnally@wilmerhale.com
*Attorneys for Plaintiff Warner Chilcott Company LLC*

David B. Bassett
Martin E. Gilmore
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022
david.bassett@wilmerhale.com
martin.gilmore@wilmerhale.com
*Attorneys for Plaintiff Warner Chilcott*
*Company LLC*


Karen L. Pascale
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
kpascale@ycst.com
*Attorneys for Defendant*
*Teva Pharmaceuticals USA Inc.*


Richard K. Herrmann
Mary Matterer
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
rherrmann@morrisjames.com
mmatterer@morrisjames.com
*Attorneys for Defendant*
*Mylan Pharmaceuticals Inc.*

Joshua H. Harris
Mark E. Waddell
John M. Griem , Jr.
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
jharris@loeb.com
mwaddell@loeb.com
jgriem@loeb.com
*Attorneys for Plaintiff Hoffmann-La Roche*
*Inc.*


James Galbraith
Maria Luisa Palmese
A. Antony Pfeffer
Peter L. Giunta
Kenyon & Kenyon LLP
One Broadway
New York, NY  10004
jgalbraith@kenyon.com
mpalmese@kenyon.com
apfeffer@kenyon.com
pgiunta@kenyon.com
*Attorneys for Defendant*
*Teva Pharmaceuticals USA Inc.*


Edgar H. Haug
Robert E. Colletti
Richard E. Parke
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151
ehaug@flhlaw.com
rcolletti@flhlaw.com
rparke@flhlaw.com
*Attorneys for Defendant*
*Mylan Pharmaceuticals Inc.*

2

| | |
|---|---|
| John C. Phillips , Jr.<br>Megan C. Haney<br>Phillips, Goldman & Spence, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806<br>jcp@pgslaw.com<br>mch@pgslaw.com<br>*Attorneys for Defendant*<br>*Sun Pharma Global FZE* | Eric C. Cohen<br>Jeremy C. Daniel<br>525 West Monroe Street<br>Chicago, IL 60661-3693<br>eric.cohen@kattenlaw.com<br>jeremy.daniel@kattenlaw.com<br>*Attorneys for Defendant*<br>*Sun Pharma Global FZE* |

By:  */s/ Richard L. Horwitz*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

1023540 / 37145

3